UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 14- |
| v. | : | |
| MERCEDEZ A. MOORE-JOHNSON, | : | VIOLATIONS: |
| Defendant. | : | 18 U.S.C. § 286 (Conspiracy to Defraud the Government with Respect to Claims); 22 D.C. Code, Section 3221(a), 3222(a)(1) (First Degree Felony Fraud). |

## INFORMATION

The United States Attorney charges that:

### COUNT ONE - CONSPIRACY

### I. INTRODUCTION

**A.   Overview Regarding Tax Matters**

At all times relevant herein:

1.   The Internal Revenue Service (IRS) is an agency of the United States of America, Department of the Treasury, maintaining its headquarters at 1111 Constitution Avenue, NW, Washington, D.C. The IRS has responsibility for administering provisions of the Internal Revenue Code and for the collection of income taxes.

2.   Absent the grant of an extension, individuals who earn income in excess of certain minimums are required to file a Form 1040 U.S. Individual Income Tax Return no later than April 15th of the calendar year immediately following the tax year.

3.   A Form 1040 is a tax form used by an individual to report taxable income from wages and/or from self-employment. An activity qualifies as a business if the primary purpose

for engaging in the activity is for income or profit and the taxpayer is involved in the activity with continuity and regularity.

4. A Schedule C - Net Profit From Business is used to report profit or loss from a sole proprietorship. The form supports and is attached to an individual's Form 1040. Profit or loss reflected on the Schedule C is also reported on the Form 1040. A Schedule C-EZ is a simplified version of the Schedule C, which is used when, among other factors, business expenses do not exceed $5,000, and the business has no employees or inventory.

5. Adjusted Gross Income is total gross income minus specific reductions.

6. The Earned Income Tax Credit (EITC), is a tax credit intended to help taxpayers keep more of what they earn. It is a refundable federal income tax credit for low- to moderate-income working individuals and families. Congress originally approved the tax credit legislation in 1975 in part to offset the burden of social security taxes and to provide an incentive to work. When EITC exceeds the amount of taxes owed, it results in a tax refund to those who claim and qualify for the credit. In order to qualify, the taxpayer must meet certain requirements and file a tax return, even if the taxpayer does not owe any tax or is not required to file an income tax return.

**B.   The Identity Theft and False Claims for Federal Income Tax Refund Conspiracy**

7. At all times relevant herein, an extensive network of over 100 individuals, many of whom were receiving some type of public assistance, engaged in a massive sophisticated identity theft and false tax refund scheme in the District of Columbia and elsewhere, seeking over $20 million in fraudulently claimed income tax refunds. During the approximate period 2006 through present (for tax years 2005 through 2012) the co-conspirators caused the filing of at least 7,000 fraudulent federal income tax returns listing one of over 436 addresses located in

the District of Columbia as the "taxpayer" address. Some of the addresses were used to file more than 100 fraudulent federal income tax returns in a single year.

8. Identity theft victims whose identifying information was used on fraudulent federal income tax returns include the elderly; those living in assisted living (including Alzheimer's patients and the disabled, including amputees); drug addicts; and incarcerated prisoners. Identifying information of deceased persons and of children whose parents sold their child's name, date of birth, and social security number was also utilized.

9. The co-conspirators utilized the stolen means of identification, including names and social security numbers, of at least 14 patients of a nursing home, ten of whom were over the age of 65 when their stolen identities were used. The patients whose identifying information was stolen included: "A. W.," "C. S.," "E. G.," "F. R.," "H. H.," "J. R.," "J. J.," "J. I.," "M. W.," "M. T.," "R. E.," "R. J.," "S. B.," and "W. H." Five of these individuals, "E. G.," "H. H.," "J. R.," "J. J," and "W. H." were deceased at the time when their means of identification was used in the scheme alleged herein.

10. The tax fraud scheme involved using inflated Adjusted Gross Income (AGI), by creating and utilizing fraudulent Schedules C to reflect income sufficient to generate a tax refund based upon the Earned Income Tax Credit.

11. The scheme involved co-conspirators operating at various levels, each being financially compensated for his or her particular role, including:

A. Those agreeing to allow their personal identifying information to be used on one or more fraudulent federal income tax returns. If the "taxpayer" was a willing participant in the scheme who provided his or her identifying information to a co-conspirator, the "taxpayer"

would accompany a co-conspirator to a check cashing service, liquor store or financial institution to negotiate the check.

B.  Those permitting their residential address to be used for the delivery of U.S. Treasury checks, which were federal income tax refunds, in the names of persons who did not in fact reside at the address;

C.  Those opening a bank account or using an existing bank account for the purpose of negotiating fraudulently obtained U.S. Treasury checks, which were federal income tax refunds, issued in the names of third parties, including victims of identity theft;

D.  Those forging the endorsement of an identity theft victim on the back of a U.S. Treasury check, which was a fraudulently obtained federal income tax refund;

E.  Those stealing the personal identifying information of patients who were incapacitated and residing at a nursing facility, patients receiving treatment at medical facilities, persons who were incarcerated, and deceased persons, which information would be used in the scheme;

F.  Employees of financial institutions who facilitated the negotiation of fraudulently obtained U.S. Treasury checks, which were federal income tax refunds.

G.  One or more U.S. Postal Service Mail Carriers who facilitated the delivery to co-conspirators of fraudulently obtained U.S. Treasury checks, which were federal income tax refunds.

H.  Those creating and mailing to the Internal Revenue Service fraudulent federal income tax returns, Forms 1040, which contained either stolen or purchased means of identification, forged "taxpayer" signatures, and which listed as the "taxpayer's" residential address the address of a co-conspirator or associate, and falsely claimed that the "taxpayer"

operated a Schedule C business as a "barber," claiming income sufficient to generate a tax refund based upon the EITC, and also fraudulently claimed dependents, who were not the dependents of the "taxpayer" listed on the income tax returns, resulting in the issuance of a fraudulent federal income tax refund.

I.  The identity theft victims in this case were unaware that their means of identification was being used to file income tax returns, did not receive the U.S. Treasury checks which were fraudulent income tax refunds, and did not endorse the checks or receive any of the proceeds. In addition, the identity theft victims are not related to the "dependents" listed on the fraudulent income tax returns, never resided at the addresses listed on the fraudulent federal income tax returns or on the Treasury checks that were issued, and never worked as barbers.

12.  In some cases, individuals unwittingly turned over their identifying information to a co-conspirator after being told that they were due an income tax refund or were entitled to some "Obama Stimulus Money."

13.  Unindicted co-conspirators who agreed to have the fraudulent U.S. Treasury checks, which were federal income tax refunds, mailed to their residence typically received in exchange approximately $150 per check. Those who negotiated such checks typically received in exchange approximately $250 per check. Larger amounts of money were earned by those who solicited others to allow their addresses to be used for the receipt of fraudulently obtained U.S. Treasury checks and those who masterminded the scheme and created and mailed the fraudulent federal income tax returns.

14.  All of the fraudulent income tax returns sought refunds. Many of the said tax returns listed the "taxpayer's" home address as an address located in the District of Columbia. District of Columbia taxpayers seeking a federal income tax refund are required to file their

income tax return with the IRS Service Center in Kansas City, Missouri. In an apparent effort to frustrate IRS fraud detection efforts, the returns filed were mailed to various IRS Service Centers, nationwide.

15. For the approximate period 2006 to present, the above-described scheme caused the filing of at least 7,000 fraudulent federal income tax returns, Forms 1040, seeking income tax refunds of at least $20 million, and caused the issuance of fraudulent U.S. Treasury checks, that is income tax refunds, which were delivered to various addresses located in the District of Columbia and elsewhere.

C. **Defendant Mercedez A. Moore-Johnson's Role in the Scheme**

16. From on or about March 20, 2010, and continuing until on or about December 26, 2010, the defendant, **MERCEDEZ A. MOORE-JOHNSON**, permitted her residential address, located in Washington, D.C., to be used by an unindicted-co-conspirator, for the receipt of U.S. Treasury checks, which were fraudulently obtained federal income tax refunds, in the names of persons who the defendant, **MERCEDEZ A. MOORE-JOHNSON**, did not know, for which she received a portion of the proceeds. Twelve fraudulent federal income tax returns, Forms 1040, were filed with the Internal Revenue Service listing the defendant, **MERCEDEZ A. MOORE-JOHNSON's** residential address as the "taxpayer" address. The twelve income tax returns sought refunds in the total amount of approximately $30,722.

17. From on or about June 7, 2010, and continuing until on or about September 22, 2010, the defendant, **MERCEDEZ A. MOORE-JOHNSON**, deposited into her bank account at Navy Federal Credit Union, Account No. XXXXXX-9367, 10 (ten) fraudulently obtained U.S. Treasury checks, totaling approximately $25,824, which were provided to her by unindicted co-conspirator "J.N.", and which were also obtained in the scheme detailed herein. The defendant,

MERCEDEZ A. MOORE-JOHNSON, received approximately $600 per check as her portion of the proceeds for each check she deposited.

## II. THE CONSPIRACY

18. From in or about March of 2010, continuing until in or about December of 2010, within the District of Columbia and elsewhere, the defendant, **MERCEDEZ A. MOORE-JOHNSON**, unindicted co-conspirator "J.N.," and other individuals whose identities are known and unknown, did unlawfully, knowingly, and willfully, conspire and agree together and with each other, to defraud the United States of America and an agency thereof, that is the Internal Revenue Service, of monies in the approximate amount of $50,848 through the filing of approximately 20 (twenty) fraudulent Federal income tax returns.

## III. THE GOAL OF THE CONSPIRACY

19. It was the goal of the conspiracy that the defendant, **MERCEDEZ A. MOORE-JOHNSON**, unindicted co-conspirator "J.N.," and other individuals whose identities are known and unknown, would enrich themselves and obtain money by negotiating U.S. Treasury checks, which were federal income tax refunds, generated by filing fraudulent U.S. federal income tax returns, the Schedule C-EZ Net Profit From Business, attached and in support of which, falsely claimed that each "taxpayer" operated a business as a sole proprietorship, including a "barber" or "childcare," and falsely stated that the "taxpayer" had gross receipts and two or more dependent children, when in fact, the "taxpayer" was either a victim of identity theft, was misled into providing his or her identifying information or was a willing participant in the scheme; no such business had been operated by the "taxpayer;" and the "taxpayer" had no such dependents; all of which caused fraudulent income tax refunds to be issued via U.S. Treasury checks that were mailed to various addresses located in the District of Columbia and elsewhere.

## IV. MANNER AND MEANS

20. In order to further the objects and goals of the conspiracy, the defendant, **MERCEDEZ A. MOORE-JOHNSON**, unindicted co-conspirator "J.N.," and other individuals whose identities are known and unknown, used the following manners and means, among others:

A. The defendant, **MERCEDEZ A. MOORE-JOHNSON**, would agree to allow her District of Colombia residential address to be used by unindicted-co-conspirators, whose identities are known and unknown, as the "taxpayer" address, in the preparation of fraudulent U.S. individual income tax returns, Forms 1040, seeking fraudulent income tax refunds.

B. The defendant, **MERCEDEZ A. MOORE-JOHNSON**, would receive at her District of Columbia residential address, through the Mails, U.S. Treasury checks, which were fraudulent income tax refunds, in the names of other individuals she did not know and who did not reside at her address.

C. The defendant, **MERCEDEZ A. MOORE-JOHNSON**, would contact unindicted co-conspirator "J.N." when she received U.S. Treasury checks in her residential mailbox.

D. Unindicted co-conspirator, "J.N." would then receive from the defendant, **MERCEDEZ A. MOORE-JOHNSON**, the U.S. Treasury checks which were mailed to her residence.

E. Unindicted co-conspirator "J.N." would thereafter cause the checks retrieved to be negotiated.

F. The defendant, **MERCEDEZ A. MOORE-JOHNSON**, and other unindicted co-conspirators, known and unknown, would receive a portion of the check proceeds.

G. The defendant, **MERCEDEZ A. MOORE-JOHNSON**, would also agree to use her Navy Federal Credit Union bank account, Account No. XXXXXX-9367, to deposit fraudulently obtained U.S. Treasury checks, in the names of other individuals she did not know, which were provided to her by unindicted co-conspirator, "J.N."

H. The defendant, **MERCEDEZ A. MOORE-JOHNSON**, deposited approximately 10 (ten) fraudulently obtained U.S. Treasury checks, issued in the names of other persons, into her Navy Federal Credit Union bank account in order to negotiate said checks.

I. The defendant, **MERCEDEZ A. MOORE-JOHNSON**, would keep approximately $600 per U.S. Treasury check that she deposited into her bank account.

J. The defendant, **MERCEDEZ A. MOORE-JOHNSON**, would then withdraw the remainder of the funds and provide them to unindicted co-conspirator, "J.N."

K. The defendant, **MERCEDEZ A. MOORE-JOHNSON**, kept the proceeds of two fraudulent checks which had been mailed to her residence which she deposited into her Navy Federal Credit Union bank account totaling $5,723.93.

## V. OVERT ACTS

21. Within the District of Columbia, and elsewhere, in furtherance of the above-described conspiracy and in order to carry out the objects thereof, the defendant, **MERCEDEZ A. MOORE-JOHNSON**, and other individuals whose identities are known and unknown, committed the following overt acts, among others:

A. On or about February 2, 2010, an unindicted co-conspirator created a fraudulent Form1040, U.S. Individual Income Tax Return, for the tax year 2008, and a fraudulent Schedule C-EZ, in the name of "T.M." with a stated District of Columbia address.

B.  On or about March 11, 2010, an unindicted co-conspirator caused the mailing of the fraudulent income tax return referenced in paragraph 21A above, by mailing it to the Internal Revenue Service, Kansas City, Missouri, 64999.

C.  On or about June 7, 2010, defendant, **MERCEDEZ A. MOORE-JOHNSON**, negotiated a U.S. Treasury check in the amount of $2,865.08, which was a an IRS income tax refund issued to "T.M.," based upon the fraudulent income tax return referenced in paragraph 21A above, by depositing it into her bank account at Navy Federal Credit Union, account number XXXXXX-9367. (**Conspiracy to Defraud the Government with Respect to Claims**, in violation of Title 18, United States Code, Section 286).

## COUNT TWO - FRAUD

22. Beginning in or about July of 2009, and continuing thereafter to in or about June of 2010, within the District of Columbia, **MERCEDEZ A. MOORE-JOHNSON,** engaged in a scheme and systematic course of conduct with intent to defraud or to obtain property of the District of Columbia Department of Employment Services, Unemployment Insurance Program, by means of a false or fraudulent pretense, representation, and promise and thereby obtained property of a value of $1,000 or more or caused the loss of property of a value of $1,000 or more, belonging to the District of Columbia Department of Employment Services, Unemployment Insurance Program, consisting of approximately $15,150 in unemployment insurance benefits. (**First Degree Felony Fraud**, in violation of 22 D.C. Code, Section 3221(a), 3222(a)(1), (2001 ed.)).